# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:19-CV-143-RJC-DCK

| | |
|---|---|
| JOHN S. INMAN and MARILYN B. INMAN, | )<br>) |
| Plaintiffs, | )<br>) |
| v. | ) MEMORANDUM AND<br>) RECOMMENDATION |
| BIOMET, INC., ZIMMER BIOMET HOLDINGS, INC., BIOMET ORTHOPEDICS, LLC, BIOMET U.S. RECONSTRUCTION, LLC, BIOMET MANUFACTURING, LLC, and ORTHOCAROLINA, P.A., | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiffs' Motion For Remand And Motion For Costs" (Document No. 14). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the motion, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be granted.

## I. BACKGROUND

**A. Factual**

On February 22, 2007, John S. Inman underwent total hip replacement surgery to remedy arthritis and degenerative joint disease and received an "M2a Magnum hip system" ("Magnum Hip System"). (Document No. 1-1 ¶¶ 27, 30). Dr. Jeffrey Mokris, of OrthoCarolina, P.A., ("OrthoCarolina") performed the surgery in Charlotte, North Carolina. Id. at ¶¶ 28–30.

The Magnum Hip System is "designed to replace human hip joints that have suffered trauma or degenerative arthritic changes." Id. at ¶ 20. The Magnum Hip System was "designed,

manufactured, marketed, promoted, and sold" by Defendants Biomet, Inc., Biomet Orthopedics, LLC, Biomet U.S. Reconstruction, LLC, and Biomet Manufacturing, LLC (all together, including Zimmer Biomet Holdings, Inc., "Biomet" or "Defendants"). Id. at ¶¶ 4, 7, 11, 14. Defendant Zimmer Biomet Holdings, Inc., ("ZBH") purchased Biomet, Inc., and its subsidiaries in 2015. Id. at ¶ 15.

Unlike previous models, the "M2a" Magnum Hip System was designed without polyethylene liner or other lubrication between the two pieces of interlocking metal that substitute for a patient's hip, making the system unable to "resist the natural friction of metal-on-metal rubbing together inside the patient's hip." Id. at ¶ 22. Consequently, the Magnum Hip System degrades over time, slowly leaching chromium and cobalt into a patient's bloodstream and causing "pain, looseness, dislocation, [and] squeaking and popping, which eventually can result in necrosis in the hip." Id. at ¶ 23. According to Plaintiffs, "Biomet began receiving reports of failures and complications from the metal-on-metal design . . . well prior to February of 2007." Id. at ¶ 25.

Plaintiffs claim that OrthoCarolina first became aware of problems with the Magnum Hip System before February 25, 2008. Id. at ¶ 55. Mr. Inman returned to OrthoCarolina on February 25, 2008, for a follow up visit and reported a "100% improvement in his right hip pain." Id. at ¶ 30. He was not informed at that time of any potential defects in the Magnum Hip System. Id. at ¶¶ 55, 58, 60. Plaintiffs further allege that OrthoCarolina became "fully aware of the complications and problems" with the Magnum Hip System "within a couple of years" of Mr. Inman's initial surgery. Id. at ¶ 56. Thereafter, OrthoCarolina recommended annual blood tests to other recipients of the Magnum Hip System to monitor their chromium and cobalt levels. Id. The Food and Drug Administration recommended blood tests every six to twelve months. Id. at ¶ 57. OrthoCarolina

did not inform Mr. Inman of potential complications or recommend annual blood tests to him until February 29, 2016. Id. at ¶¶ 34, 58.

On February 29, 2016, Mr. Inman returned to Dr. Mokris complaining of more hip pain and a "clicking sound" when he walked. Id. at ¶¶ 33-34. Dr. Mokris informed Mr. Inman for the first time of the possible complications of the Magnum Hip System and tested him for high levels of chromium and cobalt. Id. at ¶ 34. On March 8, 2016, test results showed that Mr. Inman had ten and one-half times the chromium and fifty-five times the cobalt of a normal human baseline. Id. at ¶ 35.

On April 6, 2016, Mr. Inman again underwent hip replacement surgery to replace the metal components of the artificial hip with ceramic and to add a polyethylene liner to the joints to avoid future metal-on-metal friction. Id. at ¶ 36. The surgeon found "gray synovitis" in Mr. Inman's hip, indicating metallosis. Id. at ¶ 37. Mr. Inman claims that the second surgery was "very difficult" and that he continues to experience hip pain through the present. Id. at ¶ 38.

**B. Procedural**

John S. Inman and Marilyn B. Inman ("Plaintiffs") filed their "Complaint" on February 21, 2019 in the Superior Court of Bladen County, North Carolina. (Document No. 1-1). Plaintiffs assert seven claims for relief against Biomet Defendants, including: (1) strict products liability; (2) negligence; (3) breach of express warranty; (4) breach of implied warranty; (5) fraudulent misrepresentation; (6) loss of consortium; and for (7) punitive damages. Id. at ¶¶ 43-81. In addition, Plaintiff asserts one claim against Defendant OrthoCarolina for negligence. Id. at ¶¶ 54-60. Plaintiffs seek damages in excess of $25,000 for each cause of action. Id. at pp. 23-24.

Biomet Defendants filed a "Notice of Removal of Action to Federal Court" (Document No. 1) in this Court on March 25, 2019, alleging diversity jurisdiction under 28 U.S.C. § 1332(a).

3

(Document No. 1 pp. 2-5).  It is not disputed that:  (1) Plaintiffs are citizens and residents of Elizabethtown, North Carolina;  (2) Defendant Biomet, Inc. is an Indiana corporation with its primary place of business in Warsaw, Indiana;  (3) Defendants Biomet Orthopedics, LLC, Biomet U.S. Reconstruction, LLC, and Biomet Manufacturing, LLC, are wholly owned subsidiaries of Biomet, Inc., and each is organized in Indiana with principal places of business in Warsaw, Indiana;  and (4) Defendant ZBH is an Indiana corporation with its principal place of business in Warsaw, Indiana.  (Document No. 1 ¶¶ 12-17);  (Document No. 1-1 pp. 4-5).  Defendants acknowledge that Defendant OrthoCarolina is a North Carolina corporation with its principal place of business in Charlotte, North Carolina, but argue that OrthoCarolina was fraudulently joined and should not be considered for purposes of diversity jurisdiction.  (Document No. 1 ¶¶ 19-38).

"Plaintiffs Motion for Remand and Motion for Costs" (Document No. 14) and a "…Memorandum In Support…" (Document No. 15) were filed on April 24, 2019.  In response, on May 8, 2019, Defendants filed a "Memorandum in Support of Biomet Defendants' Motion to Transfer Venue And In Opposition to Plaintiffs' Motion to Remand" (Document Nos. 25, 26).  "Plaintiffs' Reply To Biomet Defendants…" (Document No. 32) was filed on July 3, 2019.

Additionally, ZBH filed a "Motion to Dismiss Zimmer Biomet Holdings, Inc. for Lack of Personal Jurisdiction" (Document No. 10) pursuant to Fed.R.Civ.P. 12(b)(2) on April 1, 2019; "Defendant OrthoCarolina, P.A.'s 12(b)(6) Motion to Dismiss" (Document No. 22) was filed on May 3, 2019;  and "Biomet Defendants' Motion to Transfer Venue Pursuant To U.S.C. § 1406(a)" (Document No. 24) was filed on May 8, 2019.

The pending motions are ripe for review and a recommended disposition to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

"The existence of subject matter jurisdiction is a threshold issue, and any removed case lacking a proper basis for subject matter jurisdiction must be remanded." UMLIC Consol., Inc. v. Spectrum Fin. Servs. Corp., 3:09-CV-184-RJC-DSC, 665 F.Supp.2d 528, 532 (W.D.N.C. 2009) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 96, (1998); Jones v. American Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999); and Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999)). The party seeking federal jurisdiction has the burden of proving that subject matter jurisdiction exists. Id.

"If federal jurisdiction is doubtful, a remand is necessary." Mulcahey v. Columbia Organic Chemicals Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). "In the absence of a North Carolina case that squarely resolves that Plaintiff's claim is not actionable or when the issue involves a judgment call and a federal court cannot say with certainty what a North Carolina court would hold, remand is proper." Geller v. Provident Life and Acc. Ins. Co., 5:10-CV-096-RLV, 2011 WL 1239835, at *5 (W.D.N.C. Mar. 30, 2011) (citing Hartley v. CSX Transp., Inc., 187 F.3d 422, at 424-25 (4th Cir. 1999).

A party seeking to defeat remand by alleging fraudulent joinder "bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." Hartley, 187 F.3d at 424. See also Brittain v. Pacific Cycle, Inc., 5:17-CV-148-RJC-DCK, 2018 WL 1872075, at *4 (W.D.N.C. Apr. 19, 2018). "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss." Mayes v. Rapoport, 198 F.3d 457, 464 (4th Cir. 1999) (quoting Hartley, 187 F.3d at 424). Accordingly, courts should resolve doubts about removal in the plaintiff's favor. Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993).

To establish fraudulent joinder, the removing party must demonstrate that either (1) "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court," or (2) "there has been outright fraud in the plaintiff's pleading of jurisdictional facts."  Marshall, 6 F.3d at 232.  In deciding "whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'"  Mayes, 198 F.3d at 464 (quoting AIDS Counseling and Testing Centers v Group Television, Inc., 903 F.2d 1000, 1004 (4th Cir. 1990) (quoting Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964))).

Relying on Hartley, this Court has repeatedly held that remand will be granted where a plaintiff shows a "glimmer of hope" of supporting any claim in the complaint.  Electrolux Home Products, Inc. v. Crestmark Bank, 3:14-CV-298-RJC-DSC, 2014 WL 7183059, at *4 (W.D.N.C. Dec. 16, 2014);  Sonic Automotive, Inc. v. Blanchard, 3:13-CV-356-RJC-DSC, 2013 WL 5536875, at *3-4 (W.D.N.C. Oct. 7, 2013);  Geller, 2011 WL 1239835, at *4.

### III. DISCUSSION

One thing the parties now agree on is that this lawsuit does *not* belong with this Court.  See (Document Nos. 14, 22, 24).  Therefore, the question before this Court is whether this case belongs in the Superior Court of Bladen County, North Carolina, or in the United States District Court for the Eastern District of North Carolina.

In the "…Motion For Remand…," Plaintiffs argue:  (1) Defendants removed to an improper venue, which alone is sufficient cause to remand;  and (2) Defendant OrthoCarolina was not fraudulently joined, is a proper defendant, and destroys diversity jurisdiction. (Document No. 15, pp. 5, 7).

A defendant may remove any civil action brought in state court to "the district court of the United States for the district and division embracing the place where such action is pending" if the federal court has subject matter jurisdiction. 28 U.S.C. § 1441(a). "By **requiring removal to the district court for the district in which the state action is pending**, Section 1441(a) 'properly fixes the federal venue in that district.'" Encompass Advisors, Ltd. v. Unapen, Inc., 1:09-CV-229-MR-DLH, 686 F.Supp.2d 607, 614-15 (W.D.N.C. 2009) (emphasis added) (quoting Three M Enterprises, Inc. v. Texas D.A.R. Enterprises, Inc., 368 F.Supp.2d 450, 454 (D. Md. 2005) (quoting Hollis v. Fla. St. U., 259 F.3d 1295, 1300 (11th Cir. 2001))). "28 U.S.C. § 1391 does not apply when, as here, defendants remove a case to federal court from state court." Id. (quoting Godfredson v. JBC Legal Grp, P.C., 387 F.Supp.2d 543, 555 (E.D.N.C. 2005)).

In this case, as noted above, Plaintiffs filed their Complaint in the Superior Court of Bladen County, North Carolina, which is located within the Eastern District of North Carolina. (Document No. 1-1); (Document No. 15, p. 1). In their motion for remand, Plaintiffs argue that Defendants' removal of the case to this Court was "defective on its face," because Section 1441(a) required Defendants to remove the case to the United States District Court for the Eastern District of North Carolina. (Document No. 15, p. 5); see also 28 U.S.C. § 1441(a).

Plaintiffs contend that this defect alone is sufficient cause to remand. Id. at 5-6. Relying on Addison v. North Carolina Department of Crime and Public Safety, Plaintiffs suggest that Defendant "'acted improvidently and outside of the removal statute'" by "deliberately remov[ing] an action to the wrong district." Id. at 6 (quoting Addison v. N.C. Dep't of Crime, 851 F.Supp. 214, 218 (M.D.N.C. 1994)). Transferring venue rather than remanding the case "might encourage litigants to forum shop in order to gain an advantage over plaintiff." Id. at 6 (quoting Addison, 851 F.Supp. at 218). The Addison opinion further states:

> it appears that district courts should not permit an improper removal under the guise that such may be corrected by the court ruling on a motion to transfer. This requires a plaintiff to litigate the transfer motion in a distant district. It also turns matters on their head by giving defendants the initial choice of forum and disregarding plaintiff's choice. If, after remand, defendants will have lost the opportunity to timely remove the case to the correct district, that is simply the consequence of taking the law into one's own hands.

Id. at 6-7 (quoting Addison, 851 F.Supp. at 218). Plaintiffs argue that Defendants' assertion that OrthoCarolina is not a legitimate party makes Defendants' removal "even more astounding" because, without OrthoCarolina as a Defendant, "there would not even be a subsequent basis for removal [to the Western District] based upon convenience of witnesses." Id. at 5.

Defendants "recognize the holding in *Addison*," and that "failure to remove a case to the proper district is a 'defect in removal procedure,'" but contend that the Court should "correct procedural defects by transferring venue where jurisdiction is otherwise proper . . . the Eastern District of North Carolina rather than remand." (Document No. 26, pp. 9-10) (quoting Addison, 851 F.Supp. at 218). A case removed to an improper venue may be remanded or, Defendants argue, transferred to the appropriate District "if it be in the interest of justice." Id. at 14 (quoting § 1406(a)). Courts have "broad discretion to grant or deny a motion to transfer. . . ." Id. (quoting Landers v. Dawson Const. Plant, Ltd., 201 F.3d 436, *3 (4th Cir. 1999) (unpublished)).

In asserting that transfer is in the interest of justice, Defendants first argue that this Court should not follow the holding in Addison. Id. at 9-12. According to Defendants, "[i]n the twenty-five years since *Addison*," Defendants argue, "courts have repeatedly questioned its holding and application." Id. at 9. Defendants argue that "the majority of district and circuit courts agree that transfer is a proper remedy where a defendant removes a case to the wrong federal venue." Id. at 10-11 (citations omitted).

Alternatively, Defendants argue that this case is factually distinguishable from Addison. Id. at 12-13. "The facts in *Addison*," Defendants argue, "showed the defendant removed the case to forum shop with an intentional disregard for the proper removal procedure." Id. at 12 (citing Addison, 851 F.Supp. 2d at 216, and Harrah v. Trustmark Ins. Co., 227 F. Supp. 2d 600, 601–02 (S.D.W.Va. 2002) (The "improvidence in *Addison*, however, was based on the defendant's deliberate removal to the wrong district and unsupported factual representations about removal-related matters to the court.")). Here, they argue, no facts suggest Defendants removed in an effort to forum shop or intentionally disregarded removal rules. Id. Instead, Defendants attempted to remove the case to the venue where a "substantial portion of the events giving rise to the claim occurred, consistent with § 1391(b)." Id. "Any misplaced compliance with one venue statute at the expense of another is evidence of a good-faith attempt." Id.

Defendants further argue that they will be severely prejudiced by remand, while Plaintiffs will not be prejudiced by a transfer. Id. at 13-15. Defendants suggest that their "right to remove a case that could be heard in federal court is at least as important as [a] plaintiff's right to the forum of his choice." Id. at 10 (quoting McKinney v. Bd. Of Trs. Of Mayland Cmty. Coll., 955 F.2d 924, 927 (4th Cir. 1992)).

In their notice of removal and in response to the motion for remand, Defendants argue that OrthoCarolina was fraudulently joined as a defendant and therefore its citizenship should be disregarded. (Document No. 1 ¶¶ 19-38); (Document No. 26, pp. 3-9). Arguing under the second prong of the fraudulent joinder test, Defendants assert that there is "*no possibility*" that Plaintiff "would be able to establish a cause of action" against OrthoCarolina. Id. at ¶ 21 (quoting Weidman v. Exxon Mobil Corp., 776 F.3d 214, 218 (4th Cir. 2015)).

9

The undersigned has considered Defendants' arguments for fraudulent joinder, as well as OrthoCarolina's arguments for dismissal, including the contention that Plaintiffs violated North Carolina Civil Procedure Rule 9(j). Under the circumstances of this case, the undersigned is not persuaded that Plaintiffs have failed to state a claim against OrthoCarolina. Rather, it appears that Plaintiff has at least a slight possibility, or a "glimmer of hope," that the claim against OrthoCarolina may be successful. See Martin v. CenturyLink, Inc., 3:18-CV-309-RJC-DCK, 2019 1234349, at * 5 (W.D.N.C. Feb. 20, 2019) adopted by 2019 WL 1232846 (W.D.N.C. March 14, 2019); see also Burch v. Olympus America, Inc., 3:18-CV-285-RJC-DCK, 2019 WL 1234352, at *7 (W.D.N.C. March 19, 2020) adopted by 2019 WL 1230347 (W.D.N.C. March 14, 2019). As such, the undersigned recommends that a decision about the claim against OrthoCarolina is better addressed by the state court at a later date.

In short, the undersigned is persuaded that the motion for remand should be granted, the motion to transfer denied, and the remaining motions denied without prejudice to Defendants reasserting their arguments in state court, if appropriate. Plaintiff's reliance on Addison appears to be appropriate, and consistent with subsequent caselaw. See Butler v. N.C. Dept. of Transp., 154 F.Supp.3d 252 (M.D.N.C. Jan. 5, 2016) (failure to remove action to correct district required remand to state court) and Americredit Financial Service, Inc. v. Pinnex, 2019 WL 4593579 (D.S.C. Sept. 23, 2019) (same).

Plaintiffs' request for costs and expenses related to addressing the removal to this Court and remand to state court presents a close call. Noting that Biomet Defendants acknowledge a "procedural defect" in removal to this Court, the undersigned finds that Plaintiffs should be reimbursed for their reasonable costs related to filing their motion for remand (Document Nos. 14 and 32). See (Document No. 26, pp. 9-10). Although it does not appear that Defendants acted in

10

bad faith, it is the undersigned's view that they unnecessarily increased the costs and delays in this litigation by first improperly removing to this Court and then failing to withdraw their removal once the "procedural defect" became apparent.  See Butler, 154 F.Supp.3d at 255.

## IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Plaintiffs' Motion For Remand And Motion For Costs" (Document No. 14) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that "Biomet Defendants' Motion To Transfer Venue Pursuant To 28 U.S.C. § 1406(a)" (Document No. 24) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the "Motion To Dismiss Zimmer Biomet Holdings, Inc. For Lack Of Personal Jurisdiction" (Document No. 10) be **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that "Defendant OrthoCarolina, P.A.'s 12(b)(6) Motion To Dismiss" (Document No. 22) be **DENIED WITHOUT PREJUDICE**.

## V.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005);  United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Id.  "In order 'to preserve for appeal an issue

in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: November 8, 2019

David C. Keesler
United States Magistrate Judge